## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>)<br>)<br>v. )<br>)<br>) **Civil Action No. 1986-265**<br>**TERRITORY OF THE VIRGIN ISLANDS,** )<br>**et al.,** )<br>)<br>)<br>**Defendants.** )<br>_____) | |

**Attorneys:**
**Jonathan M. Smith, Esq.,**
**Laura L. Coon, Esq.,**
**Alyssa C. Lareau, Esq.,**
**Emily A. Gunston, Esq.,**
Washington, D.C.
    *For the United States*

**Richard S. Walinski, Esq.,**
Toledo, OH.
    *For the Defendants*

**Nathan T. Oswald, Esq.,**
Pemberville, OH.
    *For the Defendants*

**Aquannette Y. Chinnery, Esq.,**
**Carol Thomas-Jacobs, Esq.,**
St. Thomas, U.S.V.I.
    *For the Defendants*

**MEMORANDUM OPINION**

**Lewis, District Judge**

THIS MATTER comes before the Court on Ronald Gillette's "Motion for Leave to Intervene" (Dkt. No. 677) as a plaintiff in this matter and his memorandum in support thereof. (Dkt. No. 678). Gillette argues that he is entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a), and alternatively argues for permissive intervention under Rule 24(b). Both Plaintiff and Defendants oppose this motion, each arguing, among other things, that Gillette's motion is untimely; that Gillette's interests will not be impaired if intervention is denied; and that Gillette's intervention would delay the proceedings and prejudice the present parties. (Dkt. Nos. 679, 680). For the reasons that follow, the Court will deny Gillette's motion.

## I.  BACKGROUND

This litigation began in 1986 when the United States sued the Government of the Virgin Islands seeking to enjoin the Virgin Islands from allegedly depriving inmates at the Golden Grove Adult Correctional Facility ("Golden Grove") in St. Croix, U.S. Virgin Islands of their constitutional rights under the Eighth Amendment. In 1986, Plaintiff and Defendants entered into a Consent Decree, which contained measures that Defendants would undertake to cure the alleged violations occurring inside Golden Grove. Litigation spanning twenty-six years involving the conditions at Golden Grove and Defendants' compliance with the Consent Decree has ensued.

Gillette is a prisoner at Golden Grove who suffers from mental health problems. (Dkt. No. 678 at 9). He argues for intervention on the grounds that he has a personal interest in the Eighth Amendment litigation, particularly as it involves the issue of mental health care at Golden Grove; that his interests will be injured if his intervention is denied; and that the parties,

including the United States as Plaintiff, do not adequately represent his interests because, among other reasons, he does not share coterminous interests with the United States. Gillette further contends that his intervention will not cause delay or prejudice to the parties. (*Id.* at 2-12).

In response, Plaintiff argues that Gillette's motion is untimely and prejudicial because he has been incarcerated at Golden Grove since June 2009 but waited until August 6, 2012 to file his intervention motion, "allow[ing] the proceedings to progress to a stage where intervention would significantly disrupt the litigation." (Dkt. No. 680 at 4). Plaintiff further argues that Gillette's untimely intervention would prejudice the current parties by "disrupt[ing] the progress that the current parties have already made and chang[ing] the shape of the subsequent stages of litigation." (*Id.* at 5). Plaintiff contends that it shares identical interests with Gillette—protecting the interests of prisoners and pretrial detainees at Golden Grove—and that Gillette failed "to identify a single interest that is personal to him but is not shared by the United States." (*Id*. at 8).

Also in opposition to Gillette's motion, Defendants argue that the motion is untimely and prejudicial because the parties have spent the past fifteen months conducting discovery and engaging in settlement negotiations; that Gillette's general interest in constitutionally sufficient conditions of imprisonment will not be impaired in the absence of his intervention; and that the United States represents that general interest. (Dkt. No. 679 at 1, 4-5).

## II. ANALYSIS

### A. Rule 24(a): Intervention as a Matter of Right

"Under Rule 24(a)(2), a person is entitled to intervene if (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Harris v. Pernsley*,

3

820 F.2d 592, 596 (3d Cir. 1987) (citing *Pennsylvania v. Rizzo,* 530 F.2d 501, 504 (3d Cir. 1976)). While "these requirements are intertwined, each must be met to intervene as of right." *Harris*, 820 F.2d at 596 (citations omitted); *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) ("We have interpreted Rule 24(a)(2) to require proof of four elements from the applicant seeking intervention as of right: first, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and fourth, inadequate representation of the prospective intervener's interest by existing parties to the litigation.").

Here, the Court concludes that the second and third elements are met—as a prisoner housed at Golden Grove, Gillette has a sufficient interest in the conditions of the prison—the subject of this litigation—which will be affected by the outcome of the action. However, as discussed below, Gillette's motion to intervene as a matter of right fails because it is untimely and Gillette's interest is adequately represented by the United States.

### 1. The Untimeliness of Gillette's Motion

"An application to intervene, whether of right or by permission, must be timely under the terms of Rule 24." *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982). "The timeliness of a motion to intervene is 'determined from all the circumstances' . . . ." *Id.* (citing *NAACP v. New York*, 413 U.S. 345, 366 (1973)). Three factors aid in evaluating the timeliness issue: "(1) [h]ow far the proceedings have gone when the movant seeks to intervene, (2) [the] prejudice which resultant delay might cause to other parties, and (3) the reason for the delay." *Id.* (citations omitted). The Court is mindful that "[t]he mere passage of time . . . does not render an application untimely." *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.,* 844 F.2d 1050, 1056 (3d Cir. 1988). However, "the critical inquiry is: what proceedings of substance

on the merits have occurred? This is because the stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved." *Choike v. Slippery Rock Univ.*, 297 F. App'x 138, 141 (3d Cir. 2008) (citing *Mountain Top Condo. Ass'n. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369-70 (3d Cir. 1995)).

Here, the proceedings have progressed to an advanced stage. Gillette's "Motion for Leave to Intervene" was filed on July 21, 2012 and fully briefed on August 10, 2012. On August 22, 2012, the Court—at the request of the parties—held a telephonic status conference and was informed by the parties of their intention to settle the case. On August 31, 2012, the parties filed their "Joint Motion for Settlement," which resulted from their "extensive settlement negotiations," and is intended to "settle and compromise the claims and issues disputed between them." (Dkt. No. 689 at 1).

Thus, Gillette's motion to intervene was fully briefed a mere twelve days prior to the parties' notification to the Court of their intent to settle, and only twenty-one days prior to the parties' filing of their Joint Settlement Motion. The Court is concerned that intervention at this late stage would significantly disrupt the proceedings in view of the current status of the litigation—including possibly derailing a proposed settlement of this matter that the parties have stated "is the result of months of arms-long negotiation." *Id*. In similar contexts, other courts have shared this concern, and have denied intervention as untimely. *See Choike*, 297 F. App'x at 141 (upholding a district court's finding of untimeliness and denial of intervention at a "relatively advanced" stage of the litigation, where a settlement agreement had been reached, and intervention would "derail" settlement) (citing *Orange County v. Air Cal.,* 799 F.2d 535, 538 (9th Cir. 1986) ("Although Irvine did intervene before the Stipulated Judgment was officially

approved by the district court, the fact that Irvine waited until after all the parties had come to an agreement after five years of litigation should nevertheless weigh heavily against Irvine.")).

Turning to the second factor, the Court finds that in this instance, further delay would prejudice the parties. Gillette has not participated in this case over the last two-and-one-half decades, including, in particular, the extensive discovery and settlement negotiations which have been ongoing since July 2011. To introduce him into the equation now would significantly delay the resolution of the case given the complexity of the issues and the substantial work done by the parties.[1]

The past fifteen months of activity in this case was precipitated by Defendants' "Motion to Terminate Prospective Relief" (Dkt. No. 565), filed on July 28, 2011. Since the filing of that motion, the parties have engaged in extensive discovery, including the review of thousands of pages of documents, expert discovery, and on-site visits to Golden Grove by Plaintiff's counsel and experts. (*See* Dkt. No. 689 at 5-6) (detailing the "extensive discovery conducted by the parties . . . including depositions, site visits, and the collection and review of thousands of pages of documents."). The substantial discovery efforts already completed by the parties could be undermined by Gillette's belated intervention and the resulting delay that may require the parties to conduct further discovery in order to present current evidence to the Court. (Dkt. No. 630 at 24-25) (in which this Court concluded that a 2006 Order and 2011 Special Master Report did not provide a sufficient basis for a finding of a "current and ongoing" Eighth Amendment violation at Golden Grove in 2012).

---

[1] Gillette's contention that any such delay would be slight is unpersuasive given the complexity of this generations-spanning litigation and the amount of effort expended by the parties in the past fifteen months.

The parties have also engaged in substantial mediation efforts and negotiated a detailed and comprehensive proposed Settlement Agreement (Dkt. No. 689-1) which addresses a broad range of issues including: (1) the alleged constitutional violations at Golden Grove (pertaining to inmate safety and supervision, medical care, fire prevention and response, environmental hazards, and guard training); (2) corrective measures and the implementation thereof; (3) compliance monitoring; and (4) enforcement and termination of the agreement. (*Id.* at 4-19). If, as the parties represent, the proposed settlement is "a fair, adequate, and reasonable agreement that obviates the need for the parties to litigate their claims and defenses," (*id.* at 1), Gillette's intervention in this case would serve only to delay the conclusion of the litigation and the remediation of the prison conditions at Golden Grove.

Examining the third factor, to prevail Gillette must also persuasively explain his reason for delay in filing his motion to intervene. *Choike*, 297 F. App'x at 141 (citing *In re Fine Paper*, 695 F.2d at 500). Gillette explains that "the reason for delay is that Gillette is not capable of litigating for himself . . . [and his counsel] only recently came to realize of [sic] the deplorable conditions at Golden Grove and the lack of mental health and physical health treatment of the inmates." (Dkt. No. 678 at 14).

"To the extent the length of time an applicant waits before applying for intervention is a factor in determining timeliness, it should be measured from the point at which the applicant knew, or should have known, of the risk to its rights." *United States v. Alcan Aluminum,* 25 F.3d 1174, 1183 (3d Cir. 1994).[2] Here, Plaintiff argues that Gillette has known of this litigation since at least January 31, 2012:

---

[2] The Court is mindful that, in determining whether an application for intervention as of right is timely, "courts should be reluctant to dismiss a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive" because "the would-be

7

> [I]n this case, Gillette had actual knowledge of this litigation long before he filed his Motion to Intervene. In his Petition for a Writ of Habeas Corpus, filed on January 31, 2012, Applicant cites at length from the United States' Motion to Appoint Receiver, which details the ongoing constitutional violations at Golden Grove. Pet. for Writ of Habeas Corpus, Jan. 31, 2012 [Dkt. #1, 1:12-cv-00010]. Still, Applicant did not file his Motion to Intervene until another six months had passed.

(Dkt. No. 680 at 4).

For the reasons cited by Plaintiff, the Court agrees that Gillette was aware, or should have been aware, of the instant litigation—including the "risk to [his] rights," *Alcan Aluminum*, 25 F.3d at 1183—at least six months before filing his Motion to Intervene. Moreover, Gillette's counsel was also aware at that same time of the conditions at Golden Grove that underlie the Motion to Intervene. Indeed, Gillette's January 31, 2012 Petition, with its extensive quotation from Plaintiff's Motion to Appoint Receiver in this matter, was filed by Joseph A. DiRuzzo, III, Esq.—the same counsel who has now belatedly filed the Motion to Intervene on behalf of Gillette. (*See* Dkt. No. 1, 12-cv-10; Dkt. No. 678, 86-cv-265).

Accordingly, because the proceedings have substantially advanced, intervention would prejudice the current parties, and Gillette has not provided a persuasive reason for his delay, the Court finds that the motion to intervene is untimely.

### 2. Adequate Representation of Gillette's Interest

The Court agrees with Gillette's contention that because the litigation involves the issue of Eighth Amendment violations at Golden Grove, he "has a concrete interest in the ongoing litigation as he is one of the individuals currently incarcerated at Golden Grove." (Dkt. No. 678

---

intervenor may be seriously harmed if he is not permitted to intervene." *Mountain Top Condo.*, 72 F.3d at 366 (citation and internal quotation marks omitted). However, as discussed *infra*, that risk of harm is not present in this case because Gillette's interests are adequately represented by the United States.

at 3). However, the Court disagrees with Gillette's assertion that the United States does not adequately represent his interests.[3]

Under the adequacy of representation test, "[t]he burden, however minimal . . . is on the applicant for intervention to show that his interests are not adequately represented by the existing parties." *Hoots v. Pennsylvania,* 672 F.2d 1133, 1135 (3d Cir. 1982). "Representation will be considered inadequate on any of the following three grounds: (1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit." *Brody v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992) (citing *Hoots*, 672 F.2d at 1135). Gillette has failed to make any of the showings necessary to establish inadequacy of representation.

First, Gillette offers abstract conjecture that the position of the United States does not always align with an individual's interests, but does not provide a single, concrete example of how his interests and those of the United States in ensuring the constitutionally-mandated provision of mental health care at Golden Grove are not aligned. Not only does Gillette fail to provide support for the claimed divergence of interests, he does precisely the opposite by describing his interests with twenty-two quotations from the United States' Motion for Receivership. (*See* Dkt. No. 678 at 4-8). Second, Gillette does not argue that there is collusion between Defendants and Plaintiff, nor does the contentious, twenty-six year history of this litigation support such a claim. Third, Gillette does not contend that Plaintiff is not diligently

---

[3] Specifically, Gillette argues that the position of the United States is driven by the general public interest rather than his particular interest, leaving Gillette and the United States with "coextensive, but not conterminous, interests." (Dkt. No. 678 at 12).

prosecuting the suit. Indeed, the efforts of the United States during the past twenty-six years, including during the intense discovery and motions practice of the past fifteen months, militate against such a conclusion.

Further, Gillette does nothing to rebut the presumption of adequacy applicable to the instant case: "that if one party is a government entity charged by law with representing the interests of the applicant for intervention, then this representation will be adequate." *Brody*, 957 F.2d at 1123 (citing *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,* 674 F.2d 970, 973 (3d Cir. 1982)). With no evidence or argument to rebut this presumption, and Gillette's own description of *his* interests relying on the same language used by the United States to describe *its* interests, the Court concludes that Gillette's interest in the constitutionally-required provision of mental health care at Golden Grove is adequately represented by the United States.

In sum, the United States instituted this action and has been pursuing it diligently to ensure that the all inmates at Golden Grove enjoy the constitutional protections to which they are entitled. There is simply no evidence that the United States does not adequately represent the interests of one inmate—Gillette—seeking the same relief.

In view of the foregoing, the Court concludes that Gillette is not entitled to intervene in this lawsuit as a matter of right pursuant to Federal Rule of Civil Procedure 24(a).

### B. Rule 24(b) Permissive Intervention

Gillette also seeks to have the Court exercise its discretion to allow permissive intervention pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.

Rule 24(b)(1) provides in relevant part that "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." FED.

R. CIV. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3); *see also In re Fine Paper*, 695 F.2d at 500 ("An application to intervene, whether of right or by permission, *must be timely* under the terms of Rule 24.") (emphasis added).

Here, the Court will reject Gillette's request for permissive intervention for the same reasons articulated above that Gillette is not entitled to intervene as a matter of right: his motion is untimely, would delay litigation and prejudice the parties, and his intervention is unnecessary given that the United States adequately represents his interests in this matter. Accordingly, the Court denies Gillette's request for permissive intervention.

### III.   CONCLUSION

For the foregoing reasons, Gillette's "Motion for Leave to Intervene" (Dkt. No. 677) is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

Date: November 7, 2012                                          _____/s/_____
                                                                WILMA A. LEWIS
                                                                District Judge