DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | Civil Action No. 1986-265 |
| TERRITORY OF THE VIRGIN ISLANDS, | ) | |
| et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Attorneys:
**Jonathan M. Smith, Esq.,**
**Laura L. Coon, Esq.,**
**Sharon I. Brett, Esq.,**
**Marlysha Myrthil, Esq.,**
Washington, D.C.
        *For the United States*

**Nathan T. Oswald, Esq.,**
Pemberville, OH
**Aquannette Y. Chinnery, Esq.,**
**Carol Thomas-Jacobs, Esq.,**
St. Thomas, U.S.V.I.
**Kenrick E. Robertson, Esq.**
St. Croix, U.S.V.I.
        *For the Defendants*

<u>**MEMORANDUM OPINION**</u>

THIS MATTER comes before the Court on Monitor Kenneth A. Ray's request that "the Court order an escrow account to ensure prompt payment of monthly invoices" (Dkt. No. 813 at 1–2), Defendants' Response thereto (Dkt. No. 817), and the telephonic status conference held on May 27, 2014. For the reasons that follow, the Court will deny the Monitor's request for an Order establishing an escrow account. Instead, the Court will enter an Order requiring Defendants to pay the Monitor's monthly invoices within thirty days of receipt—in accordance

with the Defendants' contract with the Monitor, executed pursuant to the Court's May 14, 2013

Order adopting the parties' Settlement Agreement—or be subject to sanctions.

## I.  BACKGROUND

**A.     Settlement Agreement**

This litigation began in 1986 when the United States filed a Complaint seeking to enjoin

the Virgin Islands Government from depriving inmates at Golden Grove Adult Correctional

Facility ("Golden Grove") of the rights, privileges and immunities provided and secured by the

United States Constitution. (Dkt. No. 1).[1] On May 14, 2013, the Court accepted the parties'

Settlement Agreement (Dkt. No. 689-1), and entered it as an Order of the Court (Dkt. No. 742).

In the same Order, the Court adopted the United States' unopposed "Proposed Findings of Fact

and Conclusions of Law in Support of Settlement Agreement" (Dkt. No. 716), and found that

"Defendants are violating the Eighth Amendment rights of prisoners at Golden Grove[.]" (Dkt.

No. 742 at 2).

In the Settlement Agreement, the parties agreed to a broad plan to "remedy the ongoing

constitutional violations" at Golden Grove. (Dkt. No. 689-1). The parties further agreed to

"jointly select a person to serve as the Monitor to oversee the implementation" of the Settlement

Agreement. (*Id.* at Part X.A.1). By Order entered on June 19, 2013, the Court approved the

parties' joint selection of Kenneth A. Ray to serve as the Monitor. (Dkt. No. 750). By the terms

of the Settlement Agreement, "[t]he cost for the Monitor's fees and expenses [is] borne by

Defendants." (Dkt. No. 689-1 at Part X.C.1).

---

[1] During the course of the litigation, the parties previously entered into a Consent Decree, a Plan
of Compliance, and a Stipulated Agreement (all of which were entered as Orders of the Court) to
remedy the constitutional violations at Golden Grove. By Order entered on February 8, 2012,
this Court found that the earlier Orders did not comply with the Prison Litigation Reform Act.
The ensuing litigation resulted in a May 14, 2013 Order of the Court adopting the parties'
Settlement Agreement.

**B.    Defendants' First Failure to Timely Pay the Monitor**

On February 18, 2014, the United States filed a Notice advising the Court that Defendants had failed to pay the Monitor for any of the work he had completed, and that Defendants owed the Monitor in excess of $80,000. (Dkt. No. 766). Because Defendants had not paid the Monitor—even after a reminder from the Monitor which contained a final deadline for payment—the Monitor suspended his services. (*Id.* at 1). The United States requested an emergency telephonic status conference "to address the issue of monitor compensation." (*Id.*).

As ordered by the Court, Defendants filed a Response to the United States' Notice. (Dkt. No. 768). In their Response, Defendants advised the Court that "[i]n September 2013 the Monitor and the Defendants agreed to a monitoring budget for the first year of the monitorship." (*Id.* at 1). Defendants further explained that they executed a contract with the Monitor containing "terms . . . consistent with the provisions of the settlement agreement" on December 12, 2013, and that "[b]etween December 12, 2013 and February 13, 2014, the contract obtained the approval of different agencies as required by law." (*Id.*). According to Defendants, "[s]ome of the approvals required back-and-forth discussion to resolve concerns about the contract." (*Id.*). Defendants stated that "[t]hey ha[d] accomplished what was required"; that "[t]he contract was finally approved on February 13, 2014"; and that they were able to issue a check to the Monitor for his outstanding invoices on February 19, 2014. (*Id.* at 1–2). Defendants concluded their Response by stating that they did not "anticipate this kind of delay in making payments going forward." (*Id.* at 2).

**C.    February 20, 2014 Telephonic Status Conference**

At a telephonic status conference held on February 20, 2014, Defendants informed the Court that they had issued a check to the Monitor for $87,946 the previous day, and had sent it to

him the morning of the status conference. The parties informed the Court that, under the provisions of the contract between the Monitor and Defendants, Defendants were to pay the Monitor within thirty days of receipt of an invoice.

Defendants fervently asserted that the delay in payment was caused solely by the process of developing and executing the contract with the Monitor and having it approved internally. There was no dispute regarding the invoice. Defendants' counsel assured the Court that there was no reason why the process for payment of invoices going forward would take more than three days, and thus, there would be no issue in the future with payments beyond the thirty days allowed.

The Court stressed to the parties the urgency of remedying the constitutional violations found to exist at Golden Grove, particularly given that the case has been pending since 1986. The Court expressed its concern that Defendants—based on their actions—did not appear to share the Court's sense of urgency. The Court emphasized the "integral and essential" function of the Monitor, his consultants, and their work, to the Settlement Agreement, which "the parties entered, and which has been incorporated as an order of the Court." The Court concluded the discussion of monitor compensation by expressing the Court's expectation that "individuals will move with dispatch with regard to the activities that are necessary to implement the Agreement, and the Court's Order in connection therewith."

## D. Defendants' Second Failure to Timely Pay the Monitor

Approximately two-and-a-half months later, on May 8, 2014, the United States filed a "Notice and Request for Emergency Telephonic Status Conference," on the Monitor's behalf. (Dkt. No. 813). The Notice advised the Court that the Monitor, after submitting his March 2014 invoice to the parties via email on April 2, 2014, and not receiving payment, emailed the parties

on May 5, 2014 stating that if he was not paid by May 7, 2014, "he would once again suspend monitoring and seek court involvement." (*Id.* at 1). According to the Notice, "[a]s of close of business on May 7, 2014, Mr. Ray had still not received payment for the March invoice." (*Id.*). The Monitor requested that the Court set an emergency status conference "to address the issue of monitor compensation," and that "the Court order an escrow account to ensure prompt payment of monthly invoices." (*Id.* at 1–2).

The Court ordered Defendants to file a Response to the United States' Notice "explain[ing] with specificity the reason for their failure to timely pay the Monitor for the March 2014 invoice, including an identification of any agency or agencies, or any individual or individuals, that contributed to the delay of the payment." In their Response, Defendants explained that "[t]here was an oversight regarding the payment of the March 2014 invoice"; that "the March 2014 invoice was sent both to Attorney Robertson and [Bureau of Corrections] Director Julius Wilson"; and that "Director Wilson takes responsibility for this oversight regarding the payment not having been made." (Dkt. No. 817 at 2). Defendants argued that an escrow account was unnecessary, and that a viable solution would be to have the Monitor send invoices directly to the BOC business office. (*Id.*).

**E.      May 27, 2014 Telephonic Status Conference**

During the May 27, 2014 status conference, Director Wilson and counsel for Defendants explained again that the failure to timely pay the Monitor's March 2014 invoice was an oversight, largely caused by Attorney Robertson's emergency absences for much of April and part of May, [2] as well as Director Wilson's misunderstanding of his role in the payment process. As with the first failure to timely pay the Monitor, there was no dispute regarding the invoice.

---

[2] Defendants informed the Court in their Response that Attorney Robertson was away from the office on bereavement leave for an immediate family member's funeral. (Dkt. No. 817 at 2).

Counsel and Director Wilson explained that the money to pay the Monitor was already in the Bureau of Corrections' budget and therefore, there was no issue in getting the money from the Government of the Virgin Islands to pay the Monitor's monthly invoices.

The Monitor explained at the status conference that his request was for the Court itself to establish and maintain an escrow account—funded by Defendants—for the purpose of making the payments due on the Monitor's invoices.

## F.    Payment of the Monitor

As noted, Defendants are obligated under the Settlement Agreement to pay the Monitor's fees and expenses. (Dkt. No. 689-1 at Part X.C.1). The Settlement Agreement provides that "Defendants will provide the Monitor with a budget sufficient to allow the Monitor to carry out the responsibilities described in this Agreement." (*Id.* at Part X.C.2). The Monitor is to "submit detailed monthly statements of fees and expenses to the parties." (*Id.* at Part X.C.1). By the terms of the contract entered into by Defendants and the Monitor, "[t]he Government shall, within THIRTY (30) DAYS of the receipt of an invoice, pay the invoice in full or, if it contests any charge or charges on the invoice and fails to resolve the dispute by agreement, submit the dispute to the Court and the Court will determine the appropriate amount to be paid." (Dkt. No. 817-1 at 42). Defendants informed the Court at the February 20, 2014 status conference that, under the contract, Defendants are permitted to raise objections and to bring unresolved disputes to the Court. Defendants and the Monitor expressed the mutual understanding at the same status conference that the contract required the Monitor to be paid within thirty days of receipt of an invoice, even if a dispute was unresolved, and that the resolution of any dispute would lead to an adjustment of future invoices, as appropriate.

## II. APPLICABLE LEGAL PRINCIPLES

As a court order, a consent decree, "by its very nature, vests the court with equitable discretion to enforce the obligations imposed on the parties." *United States v. Local 359, United Seafood Workers*, 55 F.3d 64, 68–69 (3d Cir. 1995) (citing *EEOC v. Local 580, Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers*, 925 F.2d 588, 593 (2d Cir. 1991) ("Though a court cannot randomly expand or contract the terms agreed upon in a consent decree, judicial discretion in flexing its supervisory and enforcement muscles is broad."); *Berger v. Heckler*, 771 F.2d 1556, 1567–68 (2d Cir. 1985) (consent decrees are "hybrid" in the sense that, though construed as contracts, "they are . . . enforced as orders")). District courts have "the inherent power to enforce a consent decree in response to a party's non-compliance, and to modify a consent decree in response to changed conditions." *Holland v. N.J. Dep't of Corrections*, 246 F.3d 267, 270 (3d Cir. 2001). A court does not have to hold a party in contempt in order to exercise these powers. *Id.* at 283 n.14.

The compliance enforcement power is "not unlimited," and may be exercised "only if such compliance enforcement is essential to remedy the violation and thus provide the parties with the relief originally bargained for in the consent order." *Id.* at 283 (internal citation and quotation marks omitted). "The court's interest in protecting the integrity of . . . a [consent] decree 'justifies any reasonable action taken by the court to secure compliance.'" *United Seafood Workers*, 55 F.3d at 69 (quoting *Berger*, 771 F.2d at 1568).

## III. DISCUSSION

In exercising its continuing jurisdiction over this matter to enforce the terms of the Settlement Agreement,[3] which was entered as an Order of the Court, the Court will enter an Order requiring Defendants to pay the Monitor's monthly invoices within thirty days of receipt—in accordance with the Defendants' contract with the Monitor, executed pursuant to the Court's May 14, 2013 Order adopting the parties' Settlement Agreement—or be subject to sanctions. The Court has been called upon to address Defendants' failure to timely pay the Monitor twice in the short span of two-and-a-half months. Both times, the Monitor suspended his monitoring activities—albeit briefly—until he was paid. For the process contemplated in the Settlement Agreement to be effectuated, the Monitor must be able to perform his duties as outlined therein without these types of interruptions. Indeed, the Monitor expressed his concern at the May 27, 2014 status conference that the ongoing problem with untimely payments threatens his ability to retain the members of the professional team with whom he works. Thus, for the Monitor and his team to perform their duties, Defendants must timely pay the Monitor— as required by the Settlement Agreement and contract between Defendants and the Monitor.

### A.    The Monitor's Role

As the Court noted at the February 2014 emergency telephonic status conference, the Monitor's work is "integral and essential" to the Settlement Agreement. By the terms of the Settlement Agreement, the Monitor's duties include: reviewing, modifying, and approving Defendants' implementation schedule and training procedures (Dkt. No. 689-1 at Parts VIII.1 and IX.2–5); advising Defendants regarding substantive requirements of the Settlement

---

[3] "The District Court of the Virgin Islands will retain jurisdiction over this matter for the purposes of enforcing this Settlement Agreement." (Dkt. No. 689-1 at Part XI.1).

Agreement (*id.* at Part X.H); resolving disputes between the parties (*id.* at Parts IX.2–3, IX.5); and comprehensively reporting to the Court (*id.* at Part X.F–G).

It is clear from the terms of the Settlement Agreement that the Monitor's work is intimately woven into nearly all aspects of the parties' plan for remedying the constitutional violations at Golden Grove. Indeed, the case will not end until the Settlement Agreement terminates, and the Settlement Agreement cannot terminate until the Monitor advises the Court that Defendants have maintained compliance with the substantive provisions of the Settlement Agreement for at least a year. (*See id.* at Part XI.2). For these reasons, the Court concludes that the Monitor's work is "essential to remedy the [constitutional] violation[s]" found to exist at Golden Grove, and is instrumental to "provid[ing] the parties with the relief originally bargained for in the consent order." *Holland*, 246 F.3d at 283 (internal citation and quotation marks omitted).

## B.     The Need for Relief

Defendants have now failed to timely pay the Monitor twice. After their first failure, Defendants placed the blame squarely on the six-month period that it took to develop and execute the contract with the Monitor, and Defendants' own two-month internal process for approving the contract. Defendants explained their second failure—two-and-a-half months after their first failure—by stating that it was an "oversight." (Dkt. No. 817 at 2).

Despite Defendants' failures, it appears to the Court that the establishment of an escrow account would not be the most effective way to ensure that the Monitor is timely paid. Director Wilson and counsel for Defendants have represented to the Court that the money to pay the Monitor is already in the Bureau of Corrections' budget; therefore, there is no issue with getting the money from the Government to pay the Monitor's invoices. By their own explanation, the

issue is that Defendants have failed to process the Monitor's monthly invoices in a timely manner. Moreover, adding another layer to the payment process in which the Court performs a task that should properly be performed by the Bureau of Corrections—in order to correct a problem that should be easily addressed by the Bureau of the Corrections—is not, in this Court's view, the solution. Accordingly, the Court will deny the Monitor's request for the establishment of an escrow account.

The Court finds, however, that it cannot ignore Defendants' failures—now twice in the space of two-and-a-half months—to timely pay the Monitor. Accordingly, the Court will enter an Order requiring Defendants to pay the Monitor's invoices within thirty days of receipt—in accordance with the Settlement Agreement and Defendants' contract with the Monitor—or be subject to sanctions. The Court hopes that the threat of sanctions—which the Court will not hesitate to impose if this problem persists—will result in the appropriate degree of attention being paid by Defendants to the timely payment of the Monitor's invoices.

## C.     The Court's Inherent Power to Order Defendants to Promptly Pay the Monitor

The Court has found that the Monitor's work is "essential to remedy the [constitutional] violation[s]" found to exist at Golden Grove, and is instrumental to "provid[ing] the parties with the relief originally bargained for in the consent order." *Holland*, 246 F.3d at 283 (internal citation and quotation marks omitted). Because the Monitor's work is contingent upon Defendants paying him—as they are obligated to do under the Settlement Agreement—and because Defendants have now failed to timely pay the Monitor twice, the Court finds that entering an Order requiring Defendants to pay the Monitor within thirty days of receipt of an invoice—as required by the contract between Defendants and the Monitor—or be subject to sanctions, is a "reasonable action taken . . . to secure compliance" and "protect[] the integrity of .

10

. . [the] [consent] decree[.]"*United Seafood Workers*, 55 F.3d at 69 (quoting *Berger*, 771 F.2d at 1568).[4] The Court enters this Order pursuant to its "inherent power to enforce [the Settlement Agreement]." *Holland*, 246 F.3d at 270.[5]

## IV. CONCLUSION

For the reasons explained above, the Court will deny the Monitor's request for the establishment of an escrow account, and will instead enter an Order requiring Defendants to pay the Monitor's monthly invoices within thirty days of receipt—in accordance with the Settlement Agreement and Defendants' contract with the Monitor—or be subject to sanctions. An appropriate Order accompanies this Memorandum Opinion.

Date:  June 6, 2014


WILMA A. LEWIS
Chief Judge

---

[4] Counsel for Defendants acknowledged the Court's power to enter such an Order at the May 27, 2014 status conference.

[5] *See Holland*, 246 F.3d at 286 (noting that district courts "should be clear as to which inherent power—compliance enforcement or modification—[they] are using[.]"). Here, Defendants are obligated under the Settlement Agreement to pay the Monitor's expenses, and Defendants are obligated under their contract with the Monitor to pay the Monitor's invoices within thirty days of receipt. Given that Defendants have now failed to timely pay the Monitor twice in a two-and-a-half month period, the Court's Order requiring Defendants to pay the Monitor's invoices within thirty days of receipt is not a modification of the Settlement Agreement, but rather a means of enforcing compliance with its terms. *See United States v. Virgin Islands*, 363 F.3d 276 (3d Cir. 2004) (holding, in the context of a consent decree, that this Court's order requiring the Government of the Virgin Islands to deposit funds into a trust fund the Court established in a previous order which required the Department of Public Works to "complete certain repairs and projects by specific deadlines," was made "to force compliance with the District Court's earlier order[.]"); *cf. Harris v. Philadelphia*, 137 F.3d 209, 210, 212–13  (3d Cir. 1998) (finding that for purposes of a consent decree under which "[t]he City agreed . . . to *develop* a management information services (MIS) plan for tracking inmate population and to fulfill specified aspects of the plan by certain deadlines," the court's order—after the City failed for years to implement the plan—that the City "meet deadlines for *implementation* of the MIS plan under penalty of fines," was an impermissible modification of the consent decree, because the consent decree contained no terms requiring the city to actually implement the MIS plan) (emphasis added).