DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1986-0265 |
| ) | |
| TERRITORY OF THE VIRGIN ISLANDS, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**Attorneys:**

**William G. Maddox, Esq.**
**Christopher N. Cheng, Esq.**
**Matthew Underwood, Esq.**
Washington, D.C.
**Angela P. Tyson-Floyd, Esq.**
St. Croix, U.S.V.I.
  *For the United States*

**Christopher M. Timmons, Esq.**
St. Thomas, U.S.V.I.
**Eric Chancellor, Esq.**
St. Croix, U.S.V.I.
**William R. Lunsford, Esq.**
**Kenneth S. Steely, Esq.**
Huntsville, AL
**Carly H. Chinn, Esq.**
Ridgeland, MS
  *For Defendants*

## MEMORANDUM OPINION

**Lewis, Senior District Judge**

  THIS MATTER comes before the Court on the parties' "Joint Motion to Terminate Sections of the Settlement Agreement" ("Joint Motion") (Dkt. No. 1360) and "Memorandum of Law in Support of the Joint Motion to Terminate the Medical Sections of the Settlement Agreement and Response to Court Order" (Dkt. No. 1374). The Court held a Hearing on the Joint

Motion on April 16, 2025. The Court further addressed the Joint Motion during the June 23, 2025 Status Conference. For the reasons discussed below, the Court will grant the parties' Joint Motion.

## I.  BACKGROUND

This litigation began in 1986 when the United States filed a Complaint seeking to enjoin the Virgin Islands Government from depriving inmates at the then Golden Grove—now John A. Bell— Adult Correctional Facility ("Golden Grove" or "John A. Bell") of the rights, privileges and immunities provided and secured by the United States Constitution. (Dkt. No. 1). During the course of the litigation, the parties entered into a Consent Decree, a Plan of Compliance, and a Stipulated Agreement—all of which were entered as Orders of the Court—to remedy the constitutional violations at the Facility. By Order entered on February 8, 2012, this Court found that those earlier Orders did not comply with the Prison Litigation Reform Act ("PLRA"). (Dkt. No. 630).

The litigation continued and on May 14, 2013, the Court accepted the instant Settlement Agreement (Dkt. No. 689-1), and entered it as an Order of the Court (Dkt. No. 742). In the same Order, the Court adopted the United States' unopposed "Proposed Findings of Fact and Conclusions of Law in Support of Settlement Agreement" (Dkt. No. 716), and found that Defendants were "violating the Eighth Amendment rights of prisoners at Golden Grove[.]" (Dkt. No. 742 at 2). In the Settlement Agreement, the parties agreed to a broad plan to "remedy the ongoing constitutional violations" at Golden Grove. (Dkt. No. 689-1).

As part of the Settlement Agreement, the parties agreed, *inter alia*, that "Defendants shall provide constitutionally adequate medical *and* mental health care, including screening, assessment, treatment, and monitoring of prisoners' medical and mental health needs." *Id.* at 9. (emphasis added). To this end, under the Medical and Mental Health Care Section of the

Settlement Agreement, there are 20 substantive provisions related to such care that have been under review and evaluation by the Monitoring Team and the parties. *Id.* at 9-11.

With regard to termination, the Settlement Agreement states that "the Agreement shall terminate when Defendants achieve compliance with the substantive provisions of this Agreement and maintain compliance for one (1) year." *Id.* at 19. The Agreement further states that "substantial compliance indicates that Defendants have achieved compliance with most or all components of the relevant provisions of the Agreement." *Id.* at 2. Borrowing from the Settlement Agreement's termination provision, the Monitor assigns a "sustained compliance" rating "when a substantial compliance [rating] is maintained for 12 consecutive months." *See, e.g.*, Dkt. No. 1313-1 at 6.[1]

On November 21, 2024, the parties filed a Joint Motion to Terminate Sections of the Settlement Agreement.[2] (Dkt. No. 1360).[3] In their Joint Motion, the parties request that Sections

---

[1] While the Settlement Agreement speaks to termination of the entire Agreement, the Court will exercise its authority to terminate the Agreement progressively as specific portions of the Agreement meet the requirements for termination under the Agreement. *See, e.g., United States v. Territory of Virgin Islands*, No. 3:08-CV-00158, 2021 WL 2117372, at *2 (D.V.I. May 25, 2021) (terminating training section of the consent decree and leaving remaining portions in place although the consent decree stated that the decree would "terminate two years after the police department and the Territory have achieved compliance with each of the provisions of [the Consent Decree], and have maintained substantial compliance for at least two years"); *see also Rufo v. Inmates of the Suffolk County Jail,* 502 U.S. 367, 381 & n.6 (1992) (internal citation omitted) ("[T]he power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible."); *Nehmer v. U.S. Dep't of Veterans Affs.*, 494 F.3d 846, 860 (9th Cir. 2007) (citing cases) ("It is well established that the district court has the inherent authority to enforce compliance with a consent decree that it has entered in an order . . . [and] to modify a decree."); *McDonald v. Armontrout*, 908 F.2d 388, 390 (8th Cir. 1990) ("The district court retains authority over a consent decree, including the power to modify the decree in light of changed circumstances . . . .").

[2] Following a Notice of Corrected Docket Entry from the Clerk's Office, the parties refiled the Joint Motion on November 21, 2024. (Dkt. No. 1360).

[3] On November 18, 2025, the Territory filed a "Notice of Automatic Stay Under the Prison Litigation Reform Act," in which the Territory asserts that, under the PLRA, an automatic stay would have gone into effect 30 days following the filing of the Joint Motion. (Dkt. No. 1408 at 2).

V.1.a-h, V.1.j, V.1.k, V.1.l-o, and V.1.r. ("Section V Provisions") of the Settlement Agreement be terminated as they relate to medical care. *Id*. The parties state that they have agreed and stipulated: (1) to the "immediate termination" of the above-referenced Section V provisions as they relate to medical care and (2) that the Monitor will cease monitoring the Section V Provisions as they relate to medical care.[4] *Id*. at 2. The parties also note that the Monitor shall continue monitoring mental health care under the Section V Provisions. *Id*.

Following the November 21, 2024 Status Conference, the Court directed the parties to provide a supplemental filing to their Joint Motion to address certain issues identified by the Court

---

The Territory further notes that the "[p]arties jointly moved to terminate the Terminated Sections on November 21, 2024, and the motion remains pending." (Dkt. No. 1408 at 1).

While it is true that the parties filed their Joint Motion on November 21, 2024, the Territory neglects to mention that significant delays in the adjudication of the Joint Motion were due to the actions of the parties. First, on December 20, 2024, the Court scheduled the Hearing on the Joint Motion for January 16, 2025, with associated briefing. (Dkt. No. 1369). On January 2, 2025, the parties then filed a Motion to Extend the briefing schedule by eleven days and to continue the hearing until on or after February 10, 2025. (Dkt. No. 1370). The Court granted the Motion, and upon consideration of the Court's calendar, rescheduled the hearing for April 16, 2025. (Dkt. No. 1373). Then, due to multiple deficiencies in the parties' oral and written presentations to the Court, the Court had to seek additional information from the parties in the form of written submissions and declarations (Dkt. Nos. 1379, 1394), and to further engage the parties at subsequent hearings. Finally, the Territory also fails to mention the United States' assertion at the June 23, 2025 Status Conference that it did not agree to the Joint Motion as a PLRA Motion and does not consider it to be one. (Dkt. No. 1401 at Tr. 60:25-Tr.61:8).

In any event, in light of the parties' continued participation in the reporting and monitoring activities related to the medical provisions sought to be terminated (Dkt. No. 1408 at 1) and the instant Opinion granting the Joint Motion, the issue as to the propriety of a stay of the terminated provisions is moot. Accordingly, the Court need not address the merits of the Territory's Notice.

[4] The parties also stipulated that "the [November 2024 Site Visit] shall constitute the final medical monitoring visit and the Monitor shall discontinue monitoring the delivery and/or provision of medical care under the Terminated Provisions." (Dkt. No. 1360 at 2). However, during the November 21, 2024 Status Conference, the Territory acknowledged its understanding of the Court's position that, because the Settlement Agreement has been entered as an Order of the Court, the Court would not simply accept an agreement by the parties that monitoring is discontinued and termination is warranted. (Dkt. No. 1368 at Tr.28:2-Tr.30:12).

4

that bear on whether the terms of the Settlement Agreement have been met satisfactorily with respect to medical care, and if so, whether the parties' Joint Motion to terminate the Section V Provisions as they relate to medical care should be granted. (Dkt. No. 1369). The parties' Joint Supplemental Filing (Dkt. No. 1374) was followed by a Hearing on April 16, 2025, where the parties presented oral argument and responded to the Court's inquiries. Noting that the Monitor's ratings for medical and mental health care were conjoined prior to the Monitor's 29th Compliance Assessment Report, the Court inquired, *inter alia*, as to how the compliance ratings and/or progress for medical care could be determined independently for earlier monitoring periods in order to assess whether sustained compliance for the medical care provisions have been achieved. *See, e.g.*, (Dkt. Nos. 1295-1 at 63-91; 1313-1 at 66-87). Additionally, the Court raised the issue that, based on the Monitor's ratings, certain provisions that the parties sought to terminate had not achieved sustained compliance (substantial compliance for one year), as reflected in the Monitor's 27th, 28th, and 29th Compliance Assessment Reports.

Following the April 16, 2025 Hearing and based on representations made by the Monitor therein, the Court directed the Territory to file a Declaration from the Monitor, Dr. Kenneth A. Ray ("the Monitor"), on the following three issues:

(a) that the Monitoring Team recorded and maintained separate ratings for medical and mental health care under the Section V provisions for at least the 27th, 28th, and 29th Compliance Assessment Reports which reflect ratings that are consistent with sustained compliance, with any exceptions noted;

(b) that the Section V provisions that did not receive a sustained compliance rating for the Monitor's 27th, 28th, and 29th Compliance Assessment Reports on the chart at Dkt. No. 1348-1 at 91 nonetheless reflect sustained compliance based on the separate ratings for medical care, in that each medical care provision was in substantial compliance for at least one year, with any exceptions noted; and

(c) the reasons why the medical aspects of V1.j, V1.k, and V1.m, which the Monitor represents will be in substantial compliance in the Monitor's 30th

> Compliance Assessment Report, should nonetheless be terminated although the Territory has not achieved sustained compliance in these areas.

(Dkt. No. 1379). In addition, the Court deferred ruling on the parties' Joint Motion until after its review of the 30th Compliance Assessment Report. *Id.* at 2. Thereafter, the Monitor filed a signed Declaration ("the Monitor's Declaration") providing attestations with regard to the three issues referenced above. (Dkt. No. 1389-1).

During the Status Conference held on June 23, 2025, the Court and the parties discussed the Monitor's Declaration. In particular, the Court inquired regarding the Monitor's attestation in his Declaration that four medical provisions—V1.c, V1.f(iv)(1, 2, 3), V1.n, and V1.r[5]—moved from Partial Compliance to Sustained Compliance, without ever being recorded as in Substantial Compliance.[6] In response, the Monitor and counsel for the Territory confirmed that these four medical provisions were, indeed, moved from Partial Compliance to Sustained Compliance without having achieved Substantial Compliance. Accordingly, by Order entered on June 28, 2025, the Court directed the Monitor to file a Supplement to his Declaration identifying this new category of medical specific provisions that had been advanced from Partial Compliance directly to Sustained Compliance. (Dkt. No. 1394). The Court also directed the parties to include a discussion of how the approach used satisfies the terms of the Settlement Agreement. *Id.* Finally, because the parties and the Monitor had suggested different time frames during the June 23rd Status Conference for determining whether the Territory had achieved Sustained Compliance for the

---

[5] These Sections are: Timely Access to and Provision of Adequate Medical and Mental Health Care (V1.c); Adequate Measures for Emergency Care and Staff Training, Recognize Seriousness, Provide First Aid and Timely Response (V1.f(iv)(1, 2, 3)); Mortality and Morbidity Reviews (V1.n); and Adequate Medical Facilities, Scheduling and Availability of Appropriate and Private Clinical Spaces (V1.r).

[6] The normal progression is from Partial Compliance to Substantial Compliance and then to Sustained Compliance.

Section V medical provisions, the Court directed the parties to identify the time period—whether using the Monitor's 28th through 30th Compliance Assessment Reports or the Monitor's 31st Compliance Assessment Report—that the parties would use to establish that the Territory has achieved Sustained Compliance for the medical specific provisions. *Id.*

In response to the Court's June 28, 2025 Order, the Monitor filed his Supplemental Declaration (Dkt. No. 1399-1), and the Territory submitted a Notice (Dkt. No. 1396) stating that the parties agree that the time period used to establish Sustained Compliance for the Section V medical provisions will be the 28th through the 30th Compliance Assessment Report monitoring period, which runs from August 2023 through December 2024.

## II.  DISCUSSION

Based on the parties' written submissions, including the Monitor's Declarations and representations of the parties and the Monitor during the Hearings, the Court finds that the parties have met their burden of demonstrating that termination of the Section V provisions of the Settlement Agreement as they relate to medical care is warranted.

With regard to the Court's first inquiry as to how the medical and mental health care provisions were monitored, the Monitor attests in his first Declaration that separate compliance ratings for medical and mental health care were maintained for at least the 27th, 28th, and 29th Compliance Assessment Report periods, which reflect ratings, with exceptions noted, that are consistent with Sustained Compliance.[7] (Dkt. No. 1389-1 at 2). The Monitor further attests that the lower of the two ratings between medical and mental health care was assigned as the overall rating for both provisions. *Id.*

---

[7] The Monitor's 27th, 28th, and 29th Reports were filed on October 26, 2023, March 28, 2024, and November 8, 2024, respectively, thus spanning a period of over one year.

Further, the Monitor attests that certain identified medical provisions were rated as being in Sustained Compliance, although they had not been in Substantial Compliance for 12 months as required by the Settlement Agreement. *Id.* at 3. The Monitor attests that these Sustained Compliance ratings were appropriate because "there were no apparent ongoing patterns or practices placing incarcerated persons at real or potential risk of harm"; "remedial measures . . . were consistent with terms of the respective [p]rovision being considered and were reasonably and objectively adequate"; "remedial measures were likely to be durable"; and "compliance for a provision in question could be sufficiently addressed under another related provision not yet rated in Sustained Compliance."[8] *Id.* at 4.

Moreover, the Monitor attests to—and the 30th Compliance Assessment Report reflects—that the last three remaining medical provisions—V1.j, V1.k, V1.m—Clinically adequate medical and mental health staffing levels, periodic staffing analysis and plans are now in Substantial Compliance. (Dkt. No. 1389-1 at 4-6). Although these provisions had not achieved Sustained Compliance at the time that the Monitor's Declaration was filed, the Monitor attests that the Territory has met the substantive requirements of the provision. For example, the Monitor explains that Section V.1.j—Clinically Adequate Medical and Mental Health Staffing Levels, Periodic Staffing Analysis and Plans—is now in Substantial Compliance in the 30th Report because the Territory has demonstrated that it can meet prisoners' medical needs through supplementing nurse staffing levels with contract staff and continuous improvements. *Id.* at 4. The Monitor has also reviewed health records and held interviews with the BOC's medical leadership and staff which

---

[8] In his Declaration, the Monitor explains that V1.k—Adequate Correctional Officer Staffing/Training for Identification, Referral, and Supervision of Individuals with Serious Medical and Mental Health Needs—was assessed under Sections IV.A Safety and Security; IV.D Security Staffing; and VIII. Training. (Dkt. No. 1389-1 at 4).

provide further support that most or all of the requirements of Section V.1.j have been met. *Id.* Likewise, Section V1.m—Adequate Dental Care—has achieved Substantial Compliance as of the 30th Report. *Id.* The Monitor has attested that "timely access to adequate dental services has been achieved"; "the backlog of dental patients has been adequately addressed"; and "the new dental cha[ir] and suite [have] been completed and is operational." *Id.* at 5. Further, the Monitor finds that remedial measures with respect to dental care are likely to be durable. *Id.*

Finally, in the Supplemental Declaration, the Monitor attests that Sections V.1.c, V.1.f(iv)(1,2,3), V.1.n, and V.1.r were advanced from Partial Compliance to Sustained Compliance in the 29th Assessment Report, without having been in Substantial Compliance. (Dkt. No. 1399-1 at 2). The Monitor states that this was done based on four "clinic and operational factors": "absence of ongoing risk"; "adequacy of remedial measures"; "durability and institutionalization of practices"; and "holistic oversight across related provisions." *Id.* at 2-3. The Monitor attests that the assessment was performed independently and in collaboration with the Monitoring Teams and the parties using direct observations, on-site walkthroughs at the Facility, staff interviews, and examination of pertinent medical records and policies, including those submitted monthly to the Monitoring Team. *Id.* at 3. The Monitor further attests that the change in ratings from Partial Compliance to Sustained Compliance for the four provisions comports with "ensuring constitutionally adequate medical care and sustainable remedial measures." *Id.* The Monitor also attests that notwithstanding the ratings being advanced directly from Partial Compliance to Sustained Compliance, the four provisions would have achieved Substantial Compliance between the issuance of the Monitor's 29th Assessment Report and 30th Assessment Report. *Id.* at 4-7.

9

The Court finds that termination of the Section V provisions as they relate to medical care is warranted. The Monitor has attested and provided support for his determination that the Territory has achieved Sustained Compliance in the majority of the Section V medical provisions. Further, the Court relies on the professional judgment of the Monitor who has overseen the Territory's compliance with the provisions of the Settlement Agreement for 12 years. In his Supplemental Declaration, the Monitor states that four of the Section V provisions that are in Substantial Compliance in the 30th Report, issued in April 2025, had already maintained Substantial Compliance for ten months—just two months shy of the 12-month mark to achieve Sustained Compliance. (Dkt. No. 1399-1). In addition, the Monitor attests that 19 of the 20 Section V medical provisions—including the four provisions in Substantial Compliance—will be in Sustained Compliance by the issuance of the Monitor's 31st Report, with only one provision remaining in Substantial Compliance.[9]

In view of the foregoing, the Court finds that the parties have shown that the Territory's sustained progress under the Settlement Agreement with regard to medical care demonstrates that monitoring of the Section V provisions as it relates to medical care is no longer necessary and that oversight of medical care at the Facility can be returned to the Territory. Accordingly, the Court will grant the parties' Joint Motion and terminate the Section V provisions as they relate to medical care. *See United States v. Baltimore Police Dep't,* No. CV 17-0099, 2025 WL 1148558, at *4 (D. Md. Apr. 18, 2025) (granting parties' joint motion for partial termination and terminating two provisions of consent decree after finding that the city and police department sustained compliance for requisite one-year period provided for in the consent decree); *Territory of Virgin Islands*, 2021

---

[9] Indeed, the Monitor's attestations are reflected in the Monitor's 31st Report (Dkt. No. 1402) which was filed on November 6, 2025. Nineteen of the twenty Section V medical provisions are in Sustained Compliance, with only one provision in Substantial Compliance. *Id.* at 72.

WL 2117372, at *2 (terminating the training section of the consent decree because the record demonstrated that the police department had maintained substantial compliance in that section for three years). The Court retains jurisdiction to enforce the remaining provisions of the Settlement Agreement—including the Section V provisions related to mental health care—pending further Order of the Court.

## IV.   CONCLUSION

For the reasons discussed above, the Court will grant the parties' "Joint Motion to Terminate Sections of the Settlement Agreement" (Dkt. No. 1360). Accordingly, the Section V Provisions—Sections V.1.a-h, V.1.j, V.1.k, V.1.1-o, and V.1.r—of the Settlement Agreement (Dkt. No. 689-1) with respect to medical care will be terminated. The Court retains jurisdiction to enforce the remaining provisions of the Settlement Agreement, including the Section V provisions related to mental health care.

An appropriate Order accompanies this Memorandum Opinion.

Date:   November 20, 2025                             _____/s/_____
                                                     WILMA A. LEWIS
                                                     Senior District Judge